## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **D. BRUCE GEARY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CAUSE NO.  1:06-cv-225-WTL-JDT** |
| | ) | |
| **DONALD G. SCHARBROUGH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on the motion for partial summary judgment filed by Plaintiffs D. Bruce Geary, Arline Geary and G&R Associates (collectively referred to as "G&R").  The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.  The related motion to strike is **DENIED AS MOOT**.[1]

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences

---

[1]Defendants Donald and Rosemary Scharbrough filed a motion to strike ¶ 11 of an affidavit submitted by G&R in support of the motion for partial summary judgment, based upon the fact that the paragraph in question contains a legal conclusion rather than a fact.  The Court has not considered the statement in ¶ 11 as evidence in ruling on the instant motion.  However, it was unnecessary for the Scharbroughs to file a motion to strike the offending paragraph; it would have been sufficient, and preferable, to simply point out its impropriety in the relevant portion of their response brief.  *See* Local Rule 56.1(f) ("Collateral motions in the summary judgment process, such as motions to strike, are disfavored.  Any dispute regarding the admissibility or effect of evidence should be addressed in the briefs.").

drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.*, 200F.3d 1081, 1088 (7th Cir. 2000).  "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue." *Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein*, *P.C.*, 277 F.3d 882, 893 (7th Cir. 2001).  "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment," *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004); rather, "[t]he party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Robin*, 200 F.3d at 1088.  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## Background

The facts of record, when viewed in the light most favorable to the Scharbroughs, are as follow.  This lawsuit relates to an Indianapolis motel that at all relevant times was owned by Motel Properties, Inc. ("MPI").  On February 25, 1970, MPI entered into a 35-year lease of the motel ("the Original Lease") to a group of Lessees who later sold the leasehold interest to G&R.  In 1984, Defendants Donald and Rosemary Scharbrough took possession of the motel pursuant to an agreement to purchase G&R's interest in the lease.  At that time, approximately 40% of the motel's revenue came from its relationship with nearby Fort Benjamin Harrison; officers attending training at the Fort were housed at the motel.  The officer schools at the Fort were subsequently closed, significantly reducing the motel's income.  As a result of the Fort closing, the area around the Fort (and the motel) became economically depressed, further reducing the

motel's revenue.  The Scharbroughs became unable to continue making the payments due under the purchase agreement, and, in 1993, the parties rescinded that agreement and negotiated a sublease ("the Sublease") pursuant to which the Scharbroughs continued to operate the motel. The Sublease contained the following provisions:

> Lessee shall indemnify and hold harmless Lessor from and against any and all claims arising from Lessee's use of the Premises … and shall further indemnify and hold harmless Lessor from any and all claims arising out of any breach or default in the performance of any obligation Lessee's part to be performed under the terms of this Lease, or arising from any negligence of the Lessee, or any of Lessee's agents, contractors, or employees, and from and against all costs, attorney's fees, expenses, and liabilities incurred in the defense of any such action or proceeding brought thereon; and in case any action or proceeding be brought against Lessor by reason of any such claim, Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel satisfactory to Lessor.

Sublease ¶ 18.

Economic conditions did not improve in the area surrounding the motel in the years following the execution of the Sublease, and in 1994 G&R began accepting an average of $6,000 per month for rent, rather than the $12,000 (with scheduled increases) set forth in the Sublease. In 2003, G&R paid for insurance on the property because TMLM was unable to afford it.  The motel became used mostly as transient housing for tenants who rented rooms on a weekly basis; some have resided at the motel for a decade.

In 1996, the Scharbroughs moved to Missouri and formed a corporation ("TMLM") to manage the motel.  TMLM hired Linda Robinson[2] to manage the property, and it made numerous

---

[2]The Scharbroughs allege numerous facts that relate to Robinson and the circumstances under which she purchased the motel from MPI shortly after the lease expired and then immediately resold for a substantial profit.  However, the Scharbroughs fail to explain how these facts are relevant to the issues raised in the instant motion.

costly repairs and improvements to the property over the years.[3]  Representatives from G&R

visited the motel in 2000, 2002, 2003, 2004, and 2005; G&R also received many notices from the

Health Department regarding the motel and forwarded them to TMLM.  G&R thus was aware of

the condition of the motel throughout that time period.

The Original Lease and the Sublease both expired on July 31, 2005, at which time

possession of the motel reverted to MPI.  G&R did not notify the Scharbroughs of any breach of

the Sublease at any time during the term of the Sublease.  On April 21, 2005, MPI sent a letter to

the Scharbroughs and G&R alleging that the lease had been breached because the property had

not been properly maintained during the lease period.  MPI subsequently filed this suit against

G&R in which it makes the same allegation.

## Discussion

In its third-party complaint against the Scharbroughs, G&R asserts that any failure to

properly maintain the motel occurred during the period of the Sublease when such maintenance

was the responsibility of the Scharbroughs.  Thus, G&R asserts that the Sublease obligated the

Scharbroughs to defend and indemnify it against MPI's claims, which it has now settled.

In the instant motion, G&R argues that it is entitled to summary judgment on Count IV of its

third- party complaint, in which it seeks a declaratory judgment that the Scharbroughs had a

contractual obligation under the Sublease to defend and indemnify G&R from MPI's claims

against it.  G&R does not seek a determination of the amount of damages they are owed, but

only summary judgment as to the Scharbroughs' liability under the Sublease.

---

[3]For example, TMLM repainted and recarpeted, improved the hot water room, repaired
the roof, and replaced furniture and heating and air conditioning units.

In response, the Scharbroughs do not deny that the relevant provisions of the Sublease are unambiguous, nor do they deny that they are applicable to MPI's claims against G&R. Rather, the Scharbroughs assert the affirmative defenses of laches, waiver and estoppel and argue that there are material issues of fact regarding those affirmative defenses that make summary judgment inappropriate. Each of these affirmative defenses is discussed in turn below.

As a preliminary matter, the Court notes that while the Sublease provides that it "shall be governed by and interpreted in accordance with the laws of the State of Illinois," Sublease ¶ 27, both G&R and the Scharbroughs cite to Indiana, not Illinois, law in their briefs, and neither side raises the issue of which state's law applies. "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). Accordingly, the Court will apply Indiana law.

*Laches*

The Scharbroughs argue that G&R's claims are barred by laches. As they correctly note, the doctrine of laches "bars a party's rights when that party has unreasonably delayed asserting their claims so as to cause prejudice to the opposing party." However, because "[l]aches is an equitable doctrine, *State ex rel. Attorney General v. Lake Superior Court*, 820 N.E.2d 1240, 1256 (Ind. 2005), and G&R seeks damages for breach of contract, not equitable relief, it is doubtful that it is applicable to this breach of contract case. *See SMDfund, Inc. v. Fort Wayne-Allen County Airport Authority*, 831 N.E.2d 725, 728-29 (Ind. 2005) (analyzing whether claim at issue was an equitable or legal one before ultimately holding that "[b]ecause this action is equitable, laches may operate to bar the claim"); *cf. Lake Superior Court*, 820 N.E.2d at 1256

("[J]ust as in any other case seeking equitable relief, undue delay in seeking the relief may bar relief.").

Even assuming that laches is an available defense to the Scharbroughs in this case, G&R did not unreasonably delay asserting its claim for indemnification and defense against them. "Laches requires: "(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party." *SMDfund, Inc.*, 831 N.E.2d at 729. The Scharbroughs' laches argument is two-fold. First, they argue that G&R "knew about the condition of the motel resulting from an economic decline of the [area], yet G&R failed to exercise its rights in a reasonable amount of time, and this failure has unfairly prejudiced the Scharbroughs." Scharbroughs' Brief at 9. However, G&R's claim for indemnification did not arise until it settled MPI's claim against them. *See Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 758 (Ind. App. 2002) (where, as here, contract provides for indemnity against liability, and not merely against loss or damage, the duty to indemnify is triggered either when the party seeking indemnity "pays a claim or its liability in an underlying claim becomes fixed"). Similarly, its claim for defense under the Sublease did not arise until MPI asserted its counterclaim against it in this declaratory judgment action on March 7, 2006; until that time, there was no "action or proceeding" to be defended against. Accordingly, G&R's failure to assert a claim for defense and indemnification during the years prior to the expiration of the Sublease is irrelevant to the laches analysis, because there was no such claim to assert during that time.

The Scharbroughs also suggest that G&R knew that MPI was asserting a claim against it before the Sublease expired and yet "did not attempt to invoke any of its rights until after the

6

Sublease had expired," at which point the Scharbroughs no longer had access to the property and the records that were stored there. Assuming that this constitutes sufficient prejudice to the Scharbroughs to satisfy that prong of the laches analysis,[4] the fact remains that the first prong–unreasonable delay–is not satisfied. The Sublease expired on July 31, 2005; the evidence of record indicates that both G&R and the Scharbroughs were notified by MPI's counsel by letter dated April 21, 2005, that it believed the poor condition of the property constituted a breach of the lease. Thus, at the time of the expiration of the Sublease, the Scharbroughs were as aware as G&R of the possibility that MPI would assert a claim against G&R for breach of lease. G&R could not have inexcusably delayed asserting a known right, however, because, as already discussed, it had no right to assert until (at the earliest) MPI actually asserted its claim against it. The Scharbroughs have failed to demonstrate that G&R's claims are barred by laches.

*Waiver*

The Scharbroughs also assert the affirmative defense of waiver.

> Waiver is the intentional relinquishment of a known right, requiring both knowledge of the existence of the right and intention to relinquish it. Waiver may be shown by either express or implied consent, and the right may thus be lost by a course of conduct that estops its assertion. However, waiver is an affirmative act and therefore, mere silence, acquiescence or inactivity does not generally constitute waiver.

*City of Crown Point v. Misty Woods Properties, LLC*, 864 N.E.2d 1069, 1079 (Ind. App. 2007)

---

[4]The Scharbroughs' evidence regarding this loss of access to the records is the statement in Mr. Scharbrough's affidavit that "My wife and I went to the Motor 8 on September 8, 2005, to retrieve additional records, we were ejected from the property, as a result were not able to access all records of T.M.L.M. for our defense." Scharbrough Affidavit at ¶ 23. However, the fact that they were unable to obtain the records on September 8, 2005, does not mean that the records were unavailable to them through other means, such as a written request either within or outside of the discovery process. In other words, there is no allegation that the records were lost, only that they were unsuccessful in their one attempt to retrieve them from the motel.

(citations omitted).  The Scharbroughs argue that G&R waived its right to indemnification and defense because it failed to request a defense from the Scharbroughs and failed to notify them of the proposed settlement until after it already had agreed to it.  The first argument is without merit because, in fact, G&R did request a defense.  First, on December 2, 2005, G&R, by counsel, sent the Scharbroughs a letter that stated, in relevant part:

> You are obligated to indemnify G&R for any claim or suit thereon against G&R Associates that arises out of your operation of the motel, including costs, expenses, and attorneys' fee.
>
> . . .
>
> This letter is intended to give you notice of our rights under the sublease agreement, which we may exercise in the future.  At this time, we are not formally tendering any defense to you, because suit has not been filed. . .. In the event that suit is filed, we intend to tender G&R Associates [sic.] defense to you.

Then, on March 28, 2006, shortly after MPI filed its counterclaim against it, G&R's counsel sent a letter to the Scharbroughs' counsel[5] via certified mail that stated:

> On December 2, 2005, we provided you with notice of the claim alleged against G&R Associates by [MPI] . . . . In that letter, we reserved the right to request defense and indemnity from your clients Donald and Rosemary Scharbrough, if suit were brought against G&R by [MPI] as a result of the Scharbrough's [sic.] possession and operation of the motel since 1993.
>
> We write now to provide you notice that [MPI]'s Complaint for Damages against G&R Associates was filed on March 20, 2006, and is attached with this letter for your review.

While the second letter could certainly have been worded in a more straightforward manner, the

---

[5]The Scharbroughs state that the attorney in question "did not represent us in this law suit at that time," which is obviously true, since they were not yet parties to this lawsuit at that time. However, the attorney did represent them in some related litigation, and thus it was not unreasonable for G&R's counsel to contact the attorney rather than the Scharbroughs directly. There is no suggestion that sending the letter to the attorney was not an effective means of providing notice to the Scharbroughs.

only reasonable reading of these two letters is that G&R was exercising its right to seek defense and indemnity from the Scharbroughs pursuant to the Sublease.  That is all the Sublease required.  *See* Sublease ¶ 18 ("[I]n case any action or proceeding be brought against Lessor by reason of any such claim, Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel satisfactory to Lessor.").  Further, there was no doubt that G&R was seeking defense and indemnity as of just a few days later when, on April 6, 2006, it filed its third-party complaint against the Scharbroughs.  G&R's actions vis-a-vis providing notice to the Scharbroughs did not constitute a waiver of its rights under the Sublease.

As for the second argument, the Scharbroughs were given the opportunity to participate in G&R's settlement discussions with MPI and did, in fact, participate up to a point, attending a pre-mediation conference and even the first part of the mediation session.  If the Scharbroughs wished to be involved in the settlement process, they had every opportunity to do so.  Again, the Scharbroughs have not demonstrated that G&R acted in any way as to relinquish its rights under the Sublease.

The Scharbroughs also argue that waiver occurred because by allowing them "to continue paying the lower lease payments for the last ten years of the Sublease, and by not notifying the Scharbroughs that it considered the failure to replace the roof to be a breach of the Lease or the Sublease, G&R allowed the Scharbroughs to assume[6] that no action would be taken regarding the condition of the property."  Scharbroughs' Brief at 12.  However, the lease contains the following non-waiver provision:

---

[6]The Scharbroughs do not allege that G&R ever expressly told them that they were excusing their obligation to return the property "in good condition and repair."  Sublease ¶ 6.A.

> Lessor's waiver of a default or defaults or a breach of a covenant or covenants of this Lease shall not constitute a waiver of a default or defaults or breach of other covenants or conditions of the Lease or of subsequent defaults or breach of the one waived. . . .

Sublease ¶ 9.E.  "Nonwaiver clauses generally are enforced in Indiana," *Johnson v. Dawson*, 856 N.E.2d 769, 774 (Ind. App. 2006), and the Scharbroughs provide no reason why the general rule should not apply here.

*Equitable Estoppel*

Finally, the Scharbroughs argue that G&R's claims are barred by equitable estoppel. "The elements of equitable estoppel are: (1) a representation or concealment of a material fact, (2) made by a person with knowledge of the fact and with the intention that the other party act upon it, (3) to a party ignorant of the fact, (4) which induces the other party to rely or act upon it to his detriment." *Clark v. Crowe*, 778 N.E.2d 835, 840 (Ind. App. 2002).  The Scharbroughs essentially argue that G&R concealed its intention to enforce the indemnity clause of the Sublease, thereby inducing them to continue to operate the motel and ultimately leaving them "in a position where they did not have the financial resources to make the modifications or repairs requested by [MPI] and G&R at the end of the lease."  Scharbroughs' Response at 14.  However, this argument fails to recognize the Scharbroughs' contractual obligations.  The Scharbroughs do not explain how they would have acted differently had they not assumed that G&R did not intend to hold them to the indemnification clause at the end of the Sublease.  Implicit in their argument is that they would have at some point made the decision to abandon the motel.  The Scharbroughs present no evidence to that effect, however, and certainly present no evidence that demonstrates that they would have been financially better off had they made that choice, given G&R's rights under the Sublease in the event of such a default.  Due to the downturn of the area

10

around the motel, the Sublease appears to have been a bad deal for the Scharbroughs, but it was the deal that they struck, and they have not demonstrated that they acted to their detriment in reliance upon their assumption that they would not be held to the indemnification clause to which they agreed.

### Conclusion

The Scharbroughs argue that the indemnification and defense provisions of the Sublease are unenforceable based upon the equitable principles of laches, waiver, and equitable estoppel. For the reasons set forth above, the Court determines that the Scharbroughs have failed to present evidence which would support a ruling in their favor as to any of these affirmative defenses. The Scharbroughs do not otherwise dispute G&R's motion for partial summary judgment and, therefore, that motion is **GRANTED**.

SO ORDERED: 08/22/2007

*William T. Lawrence*

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to:

Donald F. Foley
FOLEY & TURNER
donf@foleyandturner.com

Dana L. Luetzelschwab
FOLEY & TURNER
danal@foleyandturner.com

Richard A. Smikle
ICE MILLER LLP
richard.smikle@icemiller.com

Rabeh M. A. Soofi
ICE MILLER LLP
rabeh.soofi@icemiller.com

TM-LM, Inc.
9447 Brian Drive
Indianapolis, IN 46236